UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| William F. Ueckert, Jr., <br>     Plaintiff <br><br> v. <br><br><br> City of Pharr, Texas, Juan Guerra, and <br> Ed Wylie, <br>     Defendants | § § § § § § § § § § | C.A. NO. 7:18-CV-00302 <br><br> JURY DEMANDED |

# Exhibit No. "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| William F. Ueckert, Jr., <br>     Plaintiff <br><br> v. <br><br> City of Pharr, Texas, Juan Guerra, and Ed Wylie, <br>     Defendants | § § § § § § § § § | C.A. NO. 7:18-CV-00302 <br><br> JURY DEMANDED |

### Plaintiff's Second Amended Complaint

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES **WILLIAM F. UECKERT**, **JR.**, Plaintiff herein, and files this his Second Amended Complaint, and, in support thereof, would show the Court as follows:

### I. Parties and Service

1. Plaintiff **WILLIAM F. UECKERT, JR.** is a resident of Hidalgo County, Texas.

2. Defendant **CITY OF PHARR, TEXAS** is a municipality in the County of Hidalgo, State of Texas, and has made an appearance herein.

3. Defendant **JUAN GUERRA** is a resident of Hidalgo County, Texas, who has been served with summons, but has not made an appearance herein.

4. Defendant **ED WYLIE** is a resident of Hidalgo County, Texas, who has been served with summons, but has not made an appearance herein.

### II. Jurisdiction and Venue

5. The action arises under 42 U.S.C. § 1983 ("Civil action for deprivation of rights") as hereinafter more fully appears.

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. This action involves a federal question arising under 42 U.S.C. § 1983.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

9. The events forming the basis of this suit occurred in the Southern District of Texas in Hidalgo County, Texas.

### III. General Allegations

10. The First Amendment to the United States Constitution gives every citizen the right to freedom of speech, which includes the right by a public employee to report to his supervisors' official misconduct, wrongdoing, and malfeasance and the right to reject governmental efforts to require him to make statements he believes are false.

11. "The First Amendment protects the right to refrain from speaking just as surely as it protects the right to speak." *Lewis v. Cowen*, 165 F.3d 154, 161 (2d Cir. 1999) (citing *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)).

12. It is clearly established that "the government may not compel the speech of private actors." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1283 (10th Cir. 2004); *Wooley*, 430 U.S. at 714-15.

13. In *Janus*, the Supreme Court of the United States said,

> "When a public employer does not simply restrict potentially disruptive speech but commands that its employees mouth a message on its own behalf, the calculus is very different. Of course, if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message. See *Garcetti*, 547 U.S. at 421-422, 425-426. Otherwise, however, it is not easy to imagine a situation in which a public employer has a legitimate need to demand that its employees recite words with which they disagree. And we have

never applied *Pickering* in such a case."

*Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2473 (2018).

14. The law is clearly established that whistleblowing by a public employee is speech protected by the First Amendment. *See Brown v. Texas A & M,* 804 F.2d 327 336-38 (5th Cir. 1986). Neither the First Amendment nor United States Supreme Court opinions "indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 415-16 (1979).

15. Terminating an employee for engaging in protected speech is an objectively unreasonable violation of such an employee's First Amendment rights. *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

16. Plaintiff **WILLIAM F. UECKERT, JR.** was a public employee.

17. **UECKERT** is the former city engineer for the City of Pharr, Texas (the "**CITY**").

18. The **CITY** is a municipality, governmental entity, and state actor.

19. **UECKERT** has been a registered professional engineer since 1982. He received a Bachelor of Science Degree in civil engineering from Texas A&M University in 1975.

20. **UECKERT** was employed with the **CITY** for approximately six years from September 2010 to September 19, 2016. Within the six-month period prior to his separation of employment, **UECKERT** had not received any written warnings or reprimands and had not been suspended. He was an exemplary employee.

21. On or about Friday, September 16, 2016, **UECKERT** was instructed by **CITY** engineer consultant, Jose Francisco "Joe" Torres, to sign a right-of-way (ROW) certification

form certifying that all rights-of-way had been acquired and/or public utilities relocated in relation to a construction project known as the "Owassa Project." About 80 percent of the project was being funded by the United States of America. The Texas Department of Transportation was also involved in the project. At that time, not all rights-of-way had been acquired by the **CITY** and/or not all public utilities properly relocated; and **UECKERT** informed Mr. Torres. Nonetheless, Mr. Torres insisted that **UECKERT** sign the ROW certification and/or any other plans, specifications, and estimates (PS&E documents) relating to the rights-of-way.

22. **UECKERT** expressed through speech a concern to Mr. Torres that signing the ROW certification and/or related PS&E documents while these contained misrepresentations was unethical and a violation of law. **UECKERT** refused to sign the ROW certification and/or any other plans, specifications, and estimates (PS&E documents) relating to the rights-of-way.

23. At the behest of the **CITY**, Mr. Torres sought to compel **UECKERT** to make false statements. This was not part of **UECKERT's** official duties.

24. **UECKERT** refused to sign the ROW certification and/or related PS&E documentation because **UECKERT** did not want to act unethically or violate the law. **UECKERT** would have signed the ROW certification and/or related PS&E documents had the representations in them been true and if certifying the plans in the way requested by the **CITY** would not have been illegal.

25. When a person gives statements to government, a person has an obligation to speak truthfully. It is a federal offense to make "any materially false, fictitious, or fraudulent statement or representation" in any matter within the jurisdiction of the federal government. 18 U.S.C. 1001(a)(2). It is a state offense to make, present or use a governmental record with

knowledge of its falsity. Tex. Penal Code Ann. § 37.10 (2017).

26. On Monday, September 19, 2016, three days after the meeting with Mr. Torres, **UECKERT** was called to a meeting in which **UECKERT** was chastised by the **CITY** through City Manager, **JUAN GUERRA**, and Assistant City Manager, **ED WYLIE**, for not having signed the ROW certification and/or related PS&E documents containing the misrepresentations, having expressed the speech that it would be unethical and a violation of law to sign them as requested by Torres. The **CITY**, through **UECKERT** and **WYLIE**, thereafter terminated **UECKERT's** employment that same day.

### IV. Claims

27. The claims mentioned below are alleged jointly and/or alternatively, with consistent and/or inconsistent facts and remedies.

**A.  Preliminary Statement**

28. **UECKERT** sues pursuant to 42 U.S.C. §1983 and 1988 and the United States Constitution and its Amendments.

29. Section 1983 provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation under color law of any rights, privileges, or immunities secured by the United States Constitution and laws.

30. The acts and omissions described herein violated **UECKERT**'s constitutional rights, including but not limited to, those guaranteed him by the First Amendment to the United States Constitution.

31. **UECKERT** seeks compensatory damages against **CITY OF PHARR**, **TEXAS,** and a reasonable attorney's fee as authorized by 42 U.S.C. § 1988.

32.     **UECKERT** seeks compensatory and punitive damages against **ED WYLIE** and **JUAN GUERRA** and a reasonable attorney's fee as authorized by 42 U.S.C. § 1988.

B.     **First Amendment Claim against Guerra and Wylie**

33.     **UECKERT** incorporates by reference as if fully copied and set forth at length the statements contained at Section III. herein above.

34.     The First Amendment protects **UECKERT's** right as a public employee to speak as a citizen on a matter of public concern unless the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees outweighs the interests of the employee, as a citizen, in commenting upon matters of public concern. It also protects his right to refuse to give compelled false statements, his right to be free from compelled silence, and his right to refuse to speak dishonestly.

35.     On or about Friday, September 16, 2016, **UECKERT** was instructed by **CITY** engineer consultant, Jose Francisco "Joe" Torres, to sign the ROW certification and/or related PS&E documents. **UECKERT** expressed to Mr. Torres that signing the ROW certification and/or related PS&E documents while these contained misrepresentations was unethical and a violation of law.

36.     On or about Monday, September 19, 2016, **WYLIE** and **GUERRA** had a meeting with **UECKERT**. At the meeting, **WYLIE** and **GUERRA** reminded **UECKERT** that the prior Friday **UECKERT** had already been instructed to sign the ROW certification and PS&E documents. **WYLIE** and **GUERRA** demanded **UECKERT** sign the ROW certification and/or related PS&E documents.

37.     **UECKERT** protested and told **GUERRA** and **WYLIE** that he could not sign the

ROW certification and/or PS&E documents because the certification and/or documents contained misrepresentations and false statements and that signing them would be unethical and a violation of law.

38. On or about September 19, 2016, **GUERRA** and **WYLIE** then informed **UECKERT** that his employment with the **CITY** was terminated.

39. **UECKERT** was told by **WYLIE** and **GUERRA** to act unethically and contrary to law, despite **UECKERT's** speech that it would be illegal and unethical to execute the documents as the certification would be false. **GUERRA** and **WYLIE** were familiar with the law and knew that signing ROW certifications and/or PS&E documents that contained misrepresentations was illegal. They also understood that **UECKERT** was exercising his constitutional right of free speech.

40. **UECKERT** brings a First Amendment claim against **GUERRA** and **WYLIE** for termination of his employment.

41. **UECKERT** suffered an adverse employment action, his termination of employment on September 19, 2016.

42. **UECKERT** asserts that, under 42 U.S.C. § 1983, **GUERRA** and **WYLIE** are liable for retaliating against **UECKERT** for exercising his constitutional right to free speech and his right to refuse to give compelled false statements.

43. The constitutional right to the exercise of free speech extends to the speech of governmental employees speaking on matters of public concern. **UECKERT** spoke as a citizen on a matter of public concern on September 16, 2016, and 19, 2016. Further, his First Amendment right extends to compelled speech that he make false statements.

44. On September 19, 2016, **GUERRA** and **WYLIE** each signed off on the termination of **UECKERT** and terminated him. Each was personally involved in the deprivation of **UECKERT**'s constitutional rights through their actions taken in regard to the termination.

45. The speech at issue as asserted herein was the illegality of signing the ROW certification and/or PS&E documents when the certification and/or documents contained misrepresentations. The compelled speech was making one or more false certifications of official documents to be turned over to the State of Texas (Texas Department of Public Transportation) and/or federal government.

46. Misrepresentation of public actions, illegal activity, and official malfeasance are matters of public concern. *See Kinney v. Weaver,* 367 F.3d 337, 369 ("[I]t is well-established in the jurisprudence of both the Supreme Court and this court that official misconduct is of great First Amendment significance . . . ."); *Branton v. City of Dallas,* 272 F.3d 730, 745 (5th Cir. 2001) ("We have held that public employees' speech reporting official misconduct, wrongdoing, or malfeasance on the part of public employees involves matters of public concern.").

47. It was not within **UECKERT**'s official duties as **CITY** Engineer to sign and/or certify plans and/or documents containing misrepresentations. It was not within his job duties to break the law. His job description and job duties did not require him to become a criminal or commit criminal acts. Compelled false statements cannot be part of a public employee's official duties. Further, Mr. Torres, **GUERRA** and **WYLIE** did not have authority to order **UECKERT** to make false statements for the persons who induce someone to commit a crime such as those described herein are themselves guilty of that crime. *See, e.g.* 18 U.S.C. §2(a) ("Whoever . . . counsels, commands, induces or procures [the] commission [of an offense against the United

States] is punishable as a principal.").

48.     **UECKERT**'s interest in commenting on matters of public concern outweighed **GUERRA** and **WYLIE**'s interest in promoting efficiency. **UECKERT**'s speech did not generate controversy and disruption, impede the **CITY's** general operation or affect the working relationships necessary to its proper functioning.

49.     The speech at issue and compelled speech motivated the adverse employment action.

50.     One of the reasons given to **UECKERT** for his termination of his employment by **GUERRA** and/or **WYLIE** was the speech at issue/compelled speech.

C.      **Municipal Liability Claim Against the City of Pharr, Texas**

51.     **UECKERT** incorporates by reference as if fully copied and set forth at length the statements contained at Section III. herein above.

52.     **UECKERT** asserts that, under 42 U.S.C. §1983, the **CITY** is liable for depriving **UECKERT** of his constitutional right to the exercise of free speech under the First Amendment to the United States Constitution and his right to refuse to give compelled false statements.

53.     **UECKERT** asserts: (1) the speech was a matter of public concern; (2) the **CITY** took an adverse employment action against **UECKERT**; (3) **UECKERT's** interest in the speech outweighed the **CITY's** interest in the efficient provision of public services; and (4) **UECKERT's** speech was a substantial or motivating factor for the adverse employment action.

54.     **UECKERT** asserts that his speech concerning official misconduct, wrongdoing, illegal activity, misrepresentations of public actions, and malfeasance was on a matter of public concern.

55. **UECKERT** asserts that the adverse employment action taken against him was his termination of employment by the **CITY** on September 19, 2016.

56. **UECKERT** asserts that his exercise of free speech rights did not interfere with the ongoing operation of the **CITY**.

57. **UECKERT** asserts that his speech was a substantial or motivating factor for his termination of employment. Within the six-month period prior to his termination of employment, **UECKERT** had not had any unfavorable employment evaluations. He had not been issued any written warnings. He had not been reprimanded in writing. He had not been suspended. **UECKERT** would show the stated reason(s) for his termination were a mere pretext and that he had been an exemplary employee.

58. **UECKERT** would show that the **CITY** is liable in that his claim is based upon the acts of a final policymaker. State law determines whether a particular individual is a final policymaker of a governmental entity with respect to a certain sphere of activity. The **CITY** Charter at *Article IV-1* dictates that only the City Manager may remove City employees. **JUAN GUERRA**, the City Manager, is a final policymaker.[1]

59. **GUERRA** was acting under color of law in accordance with his official duties when he deprived **UECKERT** of the exercise of his First Amendment right to free speech and retaliated against him for exercising the right. **GUERRA** had final policymaking authority from

---

[1] The **CITY** admitted in another case before this Court that **GUERRA** is a final policymaker for employment terminations. *See* Case 7:18-cv-00002, Dkt. No. 23, p. 6 ("In accordance with this, City Manager Juan Guerra made the decision to separate Plaintiff's employment through the retire/be terminated option; and is the final policy-maker for employment decisions such as with Plaintiff's.").

the **CITY** under state law concerning these acts. When **GUERRA** engaged in these acts, **GUERRA** was acting as a final policymaker for the **DISTRICT**. **UECKERT's** speech was a substantial or motivating factor in the decision to terminate **UECKERT**.

60. **UECKERT** would show that the **CITY** is liable because his claim is based upon an official policy of the **CITY**.

61. **GUERRA** acted under color of law in accordance with his official duties. The acts of **GUERRA** deprived **UECKERT** of his particular free speech rights under the United States Constitution as set forth above.

62. **GUERRA** acted pursuant to an expressly adopted official policy.

63. A single action by a governmental actor possessing final policymaking authority regarding the action in question constitutes the official policy of the governmental entity.

64. **GUERRA** adopted a policy of firing and/or disciplining the following: (1) whistleblowers; (2) employees who report wrongdoing, malfeasance, and corruption, and (3) employees who refuse to break the law for the benefit of the **CITY** and who refuse to make false statements. **UECKERT** identifies himself, Dolly Ybarra, and Heriberto De Leon as individuals who have been victims of the policy. Upon information and belief, **UECKERT** asserts that there are others.

65. The official policy was a moving force in the deprivation of **UECKERT's** First Amendment rights as shown herein above.

66. **UECKERT** would further show that the **CITY** is liable because his claim is based upon ratification by **GUERRA** of certain acts. **UECKERT** would show that Assistant City Manager **ED WYLIE** recommended **UECKERT's** termination of employment in deprivation of

**UECKERT's** exercise of free speech rights, **GUERRA** ratified the termination and basis for it, that is, **GUERRA** knew of and specifically approved of **WYLIE's** acts.

## V. Damages

67. **UECKERT** sues Defendants for all damages that he is entitled.

68. **UECKERT** sues for compensatory damages suffered in the past, including economic losses, lost wages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic damages, and compensatory damages that, in reasonable probability will be sustained in the future, which include economic losses, lost wages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses. **UECKERT** sues for the injury to his reputation proximately caused by Defendants' conduct.

69. **UECKERT** sues the **WYLIE** and **GUERRA** in their individual capacities for punitive damages.

70. **UECKERT** sues Defendants for his reasonable attorney's fees in the past and future. *See* 42 U.S.C. § 1988.

## VI. Prayer

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff **WILLIAM F. UECKERT, JR.** respectfully requests that Defendants **CITY OF PHARR, TEXAS, JUAN GUERRA,** and **ED WYLIE** be cited to appear and answer, and that on final trial, **WILLIAM F. UECKERT, JR.** have the following:

        1.      Judgment against Defendants;

        2.      Pre-judgment interest as provided by law;

3. Post-judgment interest as provided by law;

4. Reinstatement;

5. Back pay;

6. Lost employee benefits

7. Compensatory damages;

8. Permanent injunction directing the **CITY, GUERRA,** and **WYLIE** to refrain from conditioning Plaintiff's employment on any restrictions of his free speech or associations;

9. Punitive damages against **GUERRA,** and **WYLIE, ALL INDIVIDUALLY**;

10. Costs of court herein, including attorney's fees; and

11. Such other and further relief at law or in equity which Plaintiff **UECKERT** may show himself justly entitled.

          Respectfully submitted,

          /s/ Katie P. Klein
          KATIE PEARSON KLEIN
          State Bar No. 11561900
          WILLIAM D. MOUNT, JR.
          State Bar No. 14602950

          DALE & KLEIN, L.L.P.
          1100 E. Jasmine Ave. Ste 202
          McAllen, Texas 78501
          (956) 687-8700/(956) 687-2416 (fax)
          office@daleklein.com
          **Attorneys for Plaintiff**

**Certificate of Service**

    I certify that a true and correct copy of the foregoing instrument has been served on all counsel of record by notice of electronic filing on November 13, 2018, to wit:

Ricardo Navarro/Robert L. Drinkard  
DENTON NAVARRO ROCHA BERNAL & ZECH  
A Professional Corporation  
701 E. Harrison Ste. 100  
Harlingen, Texas 78550

/s/ William D. Mount, Jr.
WILLIAM D. MOUNT, JR.